AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Special Agent Adalberto Garcia, being duly sworn, depose and state that:

INTRODUCTION

1. I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been so employed for over a year. I graduated from the DEA Special Agent Academy in 2019. Prior to that, I was employed as a Police Officer with the Nashua, New Hampshire Police Department for over eleven years. For approximately four years, I was assigned to the Detective Bureau. For three of those years, I was assigned to the Nashua Police Department Drug Unit. While working in the drug unit, I was primarily assigned to the DEA High Intensity Drug Trafficking Area Task Force in the Manchester, New Hampshire District Office ("MDO"), where I was deputized as a DEA Task Force Officer. Since becoming a Special Agent with DEA, I have been assigned to the DEA Cross Border Initiative Task Force ("CBI") located in Massachusetts. In addition to the DEA academy, I have attended narcotic and criminal investigation training classes put on by the New Hampshire Police Standards and Training Council, the DEA, and the Nashua Police Department. My duties and responsibilities include the investigation of federal crimes, including violations of 21 U.S.C. §841(a)(1).

2. I have received significant training in the field of narcotics enforcement and investigations. Through my training and experience, I am familiar with the habits, methods, routines, practices, and procedures commonly employed by persons engaged in the trafficking of illegal drugs. Through my training, education, and experience, I have become familiar with the manner in which drug distribution organizations conduct their illegal activities, including

1

purchasing, manufacturing, storing, and distributing narcotics, the laundering of illegal proceeds, and the efforts of persons involved in such activity to avoid detection by law enforcement.

3. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have also become familiar with the manner in which narcotics organizations use various forms of violence and intimidation in furtherance of their narcotics trafficking activity, to protect their operations, members, narcotics, and narcotics proceeds.

4. Based on my training and experience, I am familiar with the methods of operation employed by drug traffickers operating at the local, statewide, national, and international levels, including those involving the distribution, storage, and transportation of controlled substances and the collection of money that constitutes the proceeds of drug-trafficking activities. Specifically, I am familiar with the manner in which drug traffickers use vehicles, common carriers, mail and private delivery services, and a variety of other means to transport and distribute narcotics and the proceeds of narcotics trafficking. I am familiar with the manner in which drug traffickers often store drugs and drug proceeds in storage sites commonly referred to as "stash houses." I also am familiar with the manner in which drug traffickers use telephones, coded or slang-filled telephone conversations, text messages, pager messages, and other means to facilitate their illegal activities.

PURPOSE OF AFFIDAVIT

5.  I submit this affidavit in support of an application for a criminal complaint alleging that on January 13, 2021, LENNON distributed 5 grams or more of methamphetamine, in violation of Tile 21, United States Code, Sections 841(a)(1) & (b)(1)(B)(viii) (Count One), and that on January 19, 2021, LENNON distributed 50 grams or more of methamphetamine, in violation of Tile 21, United States Code, Sections 841(a)(1) & (b)(1)(A)(viii) (Count Two).

6.  Based on the facts set forth in this affidavit, there is probable cause to believe that LENNON has violated 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and (b)(1)(B)(viii) (distribution of 5 grams or more and 50 grams or more of methamphetamine).

7.  As part of my duties, I am currently participating in an investigation into the criminal activity of LENNON.  I am familiar with the facts and circumstances of this investigation, and I have received information from a variety of sources, including but not limited to other law enforcement officers and agents, and my personal review of records and reports relating to the investigation.

8.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses, among other things. This affidavit is intended to show that there is probable cause for the requested complaint and warrant and does not set forth all of my knowledge about this matter.

PROBABLE CAUSE

9.  Beginning in approximately January 2021, a confidential source ("CS") provided information to investigators about LENNON's methamphetamine trafficking activities. CS stated that LENNON sells 10-12 pounds of methamphetamine per week, and also sells other drugs,

including heroin/fentanyl, pills, and cocaine/crack cocaine. CS admitted that s/he had previously purchased methamphetamine and cocaine from LENNON on multiple occasions. CS provided this information to investigators in hopes of receiving leniency in charging and/or sentencing decisions with respect to his/her criminal behavior in another jurisdiction. The information provided by CS has been corroborated to the extent possible, and CS successfully introduced an undercover agent ("UC") to LENNON via telephone, and provided UC with LENNON's contact information. As discussed in detail below, UC was then able to make two controlled purchases of suspected methamphetamine directly from LENNON. As such, CS is believed to be reliable. CS is unwilling to testify.

<u>January 13, 2021 Undercover Purchase of ~28 Grams of Methamphetamine from LENNON</u>

10. On January 11, 2021, at approximately 5:08 p.m., UC contacted LENNON via text message at telephone number 857-707-9941 ("the 9941 number"). In a series of text messages (conducted in English), UC ordered an ounce (approximately 28 grams) of methamphetamine from LENNON for $550. UC and LENNON agreed to conduct the transaction on January 13, 2021, in Boston. These text messages, as well as all text messages described below between UC and LENNON, were preserved.

11. On January 12, 2021, at approximately 2:58 p.m., UC sent a text message to the 9941 number to confirm that LENNON could still conduct the methamphetamine transaction the following day. UC did not hear from LENNON until approximately 10:01 p.m., at which point LENNON responded and provided UC with his new number, 603-521-0893 (the "LENNON Phone"), and instructed UC to use the LENNON Phone to reach him. At approximately 10:22

p.m., UC sent a text message to the LENNON Phone and asked LENNON if they could meet around 1:00 p.m. the following day. LENNON confirmed that he could meet at that time.

12. On January 13, 2021, at approximately 11:29 p.m., UC called LENNON on the LENNON Phone and asked LENNON where they should meet. LENNON told UC that he was staying at the Westin Copley Place Hotel, located at 10 Huntington Avenue in Boston, and that UC could meet him at the valet parking area of the hotel so they could take a quick drive together in UC's vehicle. This call was recorded. At approximately 12:11 p.m., UC sent a text message to the LENNON Phone, informing LENNON that he was approximately 45 minutes away and would call when UC was close. LENNON responded, "Perfect."

13. At approximately 12:53 p.m., UC sent a text message to the LENNON Phone, stating that UC was approximately one minute away. LENNON responded, stating that he had run to the bank and would be back shortly. UC, who was equipped with an audio/video recording device, arrived and parked at the valet area of the Westin Copley Place Hotel and waited. At approximately 1:19 p.m., LENNON sent a text message to UC and asked if UC was in the particular make and model of the UC vehicle.[1] UC confirmed. Officers conducting surveillance observed LENNON near the front entrance to the Westin Copley Place Hotel, and watched him walk to the UC vehicle. LENNON entered the front passenger seat of the UC vehicle. LENNON directed UC to drive out of the hotel parking area. While UC and LENNON engaged in brief small talk and UC drove a short distance, LENNON removed a clear plastic bag from his left front pocket and placed it into the front cup holder of the UC vehicle. The plastic bag contained a rock crystal-

---

[1] To protect the UC's identity, I am omitting the specific make and model LENNON referenced.

5

like substance.  UC handed LENNON $550 in official funds.  LENNON then instructed UC to pull over at the end of the parking lot, where LENNON exited the UC vehicle.

14. UC drove to meet up with other investigators at a pre-arranged meeting location and relinquished the plastic bag containing the crystal substance.  The substance was sent to the DEA laboratory, which confirmed that the bag contained approximately 28.3 grams of methamphetamine hydrochloride, with a purity of 95% +/- 6%.

January 19, 2021 Undercover Purchase of ~112 Grams of Methamphetamine from LENNON

15. On January 19, 2021, at approximately 9:49 a.m., UC sent a text message to LENNON, looking to purchase a quarter-pound (approximately 113 grams) of methamphetamine.  LENNON agreed to sell UC the quarter-pound of methamphetamine for $2,100.  UC asked if LENNON could meet that day.  LENNON responded at approximately 12:31 p.m., stating that he could meet that day, and that he was located in Medford, Massachusetts.  LENNON proposed meeting at a parking garage near 95 Station Landing at approximately 1:30 p.m.  LENNON also sent a text message stating, "I can have my girl run out and meet you if need be."

16. At approximately 1:51 p.m., LENNON sent UC a text message asking how far away UC was, and UC responded that UC was approximately five minutes away.  At approximately 2:00 p.m., UC, equipped with an audio/video recording device, called LENNON and stated that UC was parked outside 95 Station Landing, which is a Marriot Hotel.  LENNON stated that he would be right down.  Moments later, surveillance officers observed LENNON walk out of the hotel and enter the front passenger seat of the UC vehicle.  While LENNON and UC were engaging in small talk, LENNON took a clear plastic bag out of his front sweatshirt pocket and placed it into the UC vehicle's cup holder.  Inside the plastic bag were numerous crystal rocks.

UC handed LENNON $2,100 in official funds. Surveillance officers observed LENNON exit the UC vehicle and walk into the hotel.

17. UC drove to meet up with other investigators at a pre-arranged location and relinquished the plastic bag containing the rock-crystal substance. The substance was sent to the DEA laboratory, which confirmed that the bag contained approximately 111.6 grams of methamphetamine hydrochloride, with a purity of 100% +/- 6%.

18. Based on the foregoing, there is probable cause to believe that, on January 13, 2021, LENNON distributed 5 grams or more of methamphetamine, in violation of Tile 21, United States Code, Sections 841(a)(1) & (b)(1)(B)(viii), and that on January 19, 2021, LENNON distributed 50 grams or more of methamphetamine, in violation of Tile 21, United States Code, Sections 841(a)(1) & (b)(1)(A)(viii).

Adalberto Garcia
DEA Special Agent

Sworn to by telephone in accordance with Fed. R. Crim. P. 4.1, this 4th day of February, 2021.

HONORABLE JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS